## BLANTON v. DAVIS.

### Opinion delivered February 10, 1913.

1. INFANTS—GUARDIAN AD LITEM—DEFENSE OF INFANT.—Where an infant has no statutory guardian, in an action against the infant, proof can not ,e taken in the action prior to the appointment, either by the court, or the clerk in vacation, of a guardian *ad litem*. (Page 8.)

2. SAME—SAME—SAME.—Where infants, who are parties to an action, have a regular statutory guardian, when proof in the action was taken, although the guardian, who was the infants' mother, made no answer for the infants, but the cause was defended by the mother of the infants who was a party defendant, a judgment against the mother and infants will be affirmed. (Page 9.)

3. MORTGAGES—DEED ABSOLUTE ON ITS FACE.—A deed absolute on its face will be treated as a mortgage if so intended by the parties. (Page 10.)

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was instituted as an action to redeem from a deed, absolute on its face, which, it is alleged, was intended as a mortgage. The complaint was filed on February 10, 1908, and alleged that on February 17, 1897, one T. A. R. Davis was the owner of a certain eighty-acre tract of land in St. Francis county, Ark., and on that date executed a deed of trust to the land which, by successive assignments, became the property of Mrs. M. E. Blanton, on December 7, 1904. That said note being past due and unpaid, the said Davis executed to J. P. Blanton a deed of conveyance for the land described in the deed of trust, except twenty acres thereof, for

$1,800, reserving a lien on the land for the payment of the purchase price; that this deed was executed and intended to be security to the said J. P. Blanton, who assumed and agreed with the said T. A. R. Davis to pay off and discharge the note secured by the deed of trust, and on February 10, 1901, delivered said note and deed of trust to the said Davis and endorsed on the back of said deed of trust an agreement in the following words, towit: "I, J. P. Blanton, agree to let T. A. R. Davis's children have the land, sixty acres, back in seven years for the same I gave, $1,800.

J. P. Blanton.
T. A. R. Davis.

February 16, 1901.

The complaint further states that J. P. Blanton went into possession of the sixty-acre tract January 8, 1901, and continued in possession until his death and that his widow has been in possession since his death, enjoying the rents and profits thereof. That the said Davis was dead and had left him surviving these plaintiffs, who were his widow and children. The widow and infant children of the said Blanton were made defendants and there was a tender of the amount due under the mortgage.

The answer denied there was any agreement for a redemption, but alleged the deed was an absolute conveyance, as it purported to be.

The court found that the deed was a mortgage, and appointed a master to state an account between the parties and the appeal is from the final decree rendered in this cause.

It appears, however, that the plaintiff's proof was taken May 3, 1910, and filed May 7, 1910, but that no guardian *ad litem* was appointed for Blanton's infant children until June 20, 1911, when the appointment was made by the court and he filed his answer on June 29, 1911. The decree was rendered October 26, 1911. It is not claimed that any fraud was practiced upon them, but that this proof should not have been read against

them, and without it the decree was unsupported by the evidence. Was it necessary to appoint the guardian *ad litem* before taking the proof?

*W. W. Hughes,* for appellant.

The court erred in permitting testimony to be read in evidence which was taken before the appointment of a guardian *ad litem* for the infant defendants. 40 Ark. 56.

*S. H. Mann* and *J. W. Morrow* for appellee.

The mother and co-defendant of the infant defendants was their regular guardian and defended for them. No objection was made to the reading of the testimony, and the defense was full and *bona fide* at all stages, and that is all that was necessary. 90 Ark. 44.

SMITH, J., (after stating the facts). The following provisions are found in Kirby's Digest:

Section 6023. The defense of an infant must be by his regular guardian, or by a guardian appointed to defend for him, where no regular guardian appears, or where the court directs a defense by a guardian appointed for that purpose. No judgment can be rendered against an infant until after a defense by a guardian.

Section 6024. The guardian to defend shall be appointed by the court, or by the judge thereof. The appointment can not be made until after service of the summons in the action. No party or attorney in an action can be appointed guardian to defend therein for an infant or person of unsound mind. During the vacation of the courts, the clerk of the circuit and chancery courts shall have the same power of appointing guardians *ad litem* for infant defendants, who have been summoned in the action, that their respective courts or the judges thereof have; but the court or judge shall have the power to change the guardians so appointed by appointing others in their stead, whenever the interests of the infants require such change. The court shall indorse the name of the guardian and the date of his appointment upon the complaint.

Section 6025. The appointment may be made upon the application of the infant, if he is of the age of fourteen years, and applies within twenty days after the service of the summons. If he is under the age of fourteen years, or does not so apply, the appointment may be made upon the application of any friend of the infant, or on that of the plaintiff in the action.

Certainly these three sections mean something more than that a decree may be rendered when a summons has been served on an infant and an answer filed by a guardian *ad litem.* If the filing of an answer was all that was required, why give an infant fourteen years of age the right to select this guardian, what necessity is there for a choice to be made? One guardian as well as another could file a general denial of the allegations of the complaint, but if no more was required, why file an answer at all, why not treat the allegations of the complaint as being at issue without the empty formality of filing a general denial? Is it not a more reasonable construction of the statutes quoted to say that the Legislature intended the infant should have an actual and not a fictitious defense?

Section 6023 provides that the defense of an infant must be by his regular guardian, if he has one, but if not, the court shall appoint him one for him for that purpose; and for that particular case, he has the same responsibilities and duties that a regular guardian would have.

Section 6024 provides that when the service is complete, the clerks of the courts shall have the power to appoint guardians *ad litem,* but such guardians are subject to removal by the court, whenever the interests of the infant require a change. What interest would require this change except a failure to make a substantial defense? The court could permit an answer to be filed at any time and could require it to be done at any time before trial, if nothing more than the filing of an answer was required. This section, 6024, contemplates that there shall be no unnecessary delay in the preparation of the cause for submission, and to avoid that delay, provides

that the clerk of the courts may appoint a guardian to represent the infant, and yet for the infant's protection, provision is made for the removal of this guardian if the infant's interests requires that action by the court.

It is no doubt true in this case that the appointment of a guardian *ad litem* before the proof was taken would not have any more fully protected the rights of the infants than they were protected. Their mother was sued with them and a vigorous and able defense was made, but this does not suffice. The law directs the procedure against a minor and in this case, its requirements were not met.

In the case of *Ryan* v. *Fielder,* 99 Ark. 376, an infant was sued with his father for a tort and after a vigorous defense there was a judgment for the plaintiff. A motion in arrest of judgment was filed and was treated as a motion for a new trial and granted for the sole reason that no guardian *ad litem* had been appointed, upon the theory that no defense, with whatever good faith or zeal conducted, can supply the failure to observe the statute. The case was affirmed on appeal.

In *Martin* v. *Gwynn,* 90 Ark. 47, in an opinion by Justice Wood, it was held that the defense of a minor might be made by a foreign guardian, but that case does not conflict with the views here expressed. There a full defense was made, under the directions of the foreign guardian, and it was said that while the law guarded with jealous eye the rights of an infant defendant, this defense was treated as being in accord with the spirit of the statute and a substantial compliance with it.

Infant litigants, whether plaintiff or defendant, are under the care of the court, and in the case of *Nashville Lumber Co.* v. *Barfield,* 93 Ark. 359, which was a case where the court below had removed a next friend by whom suit was brought and had appointed another, the court said: "It is the duty of the court to protect the infant fully in the progress of the cause and to see that he is not prejudiced in the trial by any act or omission of the person by whom the suit is brought."

In the case of *Varner* v. *Rice,* 44 Ark. 244, Justice EAKIN, speaking for the court, said: "The answer of the guardian *ad litem* denies generally such of the allegations as it may be important to controvert, and submits the rights of the minor, Wm. I. Varner, to the court. This pleading is not to be approved. It amounts to no answer at all, and is useless. If all that may be required, is to simply file such a paper in a perfunctory way, the satute might just as well have declared the issue to be made in all cases by the allegations of the complaint, without any answer by a guardian, as allegations of new matter in an answer are put in issue without reply. It is the duty of the guardian *ad litem* to make a full defense without regard to the truth of the denials as to anything which might be prejudicial to the minor. That is illustrated in this case. One of the allegations is that a partition was desirable and might be fairly and justly made. It may not be true that it could be, at this time. It might be detrimental to the interest of the minor. The court made no inquiry as to that because no adverse pleading seemed to require it, and no proof on the subject was taken before the partition was decreed. It is better that the answer of a guardian should specifically deny material allegations. It need not be verified by oath." The same learned jurist wrote the opinion in the case of *Evans as Guardian* v. *Davis,* 39 Ark. 235, which was a continuation of the case of *Cannon* v. *Davis,* reported in 33 Ark., p. 56. Upon the remand of the case, the death of the defendant Cannon was suggested, and not denied, and upon the motion of his counsel in the cause, the suit was revived against his heirs by name, all of whom were described as infants under fourteen years of age, having no guardian. Their appearance was entered by counsel, and upon his further motion, a guardian *ad litem* was appointed, who by leave of the court, adopted the answer made by their ancestor while living, and the cause proceeded. The court there said: "It was error to proceed with the cause at all, until the heirs of Cannon had been brought in as required by law, that is by proper service.

The provisions of the code are very plain, and this court has time and again insisted that it is the duty of the judges and chancellors to permit no agreement of attorneys, or guardians *ad litem,* to dispense with statutory regulations for the protection of the rights of infants. With regard to these, the courts should either refuse to move until they are complied with, or move in the first instance to compel compliance without any discussion of their policy. It may seem absurd to require personal service upon an infant in arms, but there may be a very wise policy in having intelligent children of twelve or thirteen years of age, made acquainted with proceedings affecting their rights, and laws must be considered with regard to their general effect   *   *   *   No appointment of a guardian *ad litem* to defend for an infant can be made, at all, until there be service, and such guardian, when duly appointed can admit nothing in his answer, the burden of proof of which would otherwise be on the plaintiff, but must put in issue every material fact, which he may well do, as he is not required to answer on oath. In these respects the Code practice is much more rigid than the old practice in equity, and this rigidity is justified by the shipwrecks of infants's estates, which have so often resulted from the carelessness of friends and relations. If this court should indulge itself in making exceptions, all would be again at sea. The rights of infants can in no case be judicially affected, except upon proper issues and proof, and upon statutory service, where they are defendants, and ought not to be on their own application by next friend or guardian, without reference to the master's or the chancellor's own careful examination, to ascertain whether or not the thing asked be really for the benefit of the infant."

The same wise jurist in the case of *Pinchback* v *Graves,* 42 Ark. 227, said: "The business and judicial history of America is strewn with the wrecks of infants's fortunes. The courts and relatives of infants are culpable in this, not the Legislature. The laws are wise and careful. The true spirit of them should be kept in

view and administered. Our statutes require not only service on an infant, but that his defense must be made by his guardian if he has one; or if he has not, by one specially appointed. In making this appointment, the court should take care that it be not done until after service on the infant, that he may be heard upon this point if he should desire it, and must take care, further, that no attorney nor party in the action be selected. No judgment should be rendered affecting the interests of an infant until after defense by guardian and this defense should not be a mere perfunctory and formal one, but real and earnest. He should put in issue, and require proof of every material allegation of a complaint prejudicial to the infant, whether it be true or not. He is not required to verify the answer and can make no concession on his own knowledge. He must put and keep the plaintiff at arms length. These are wise provisions, and they are so far imperative. I think too that a guardian *ad litem,* fails in his duty, and does not apprehend the true obligation which he voluntarily assumes, if he contents himself with simply putting in a general denial, as is commonly done, and then leaves the infant to the mercy of the rude stream of the ensuing contest. His interests, after issue, require protection as well as before. Proof may be required in his behalf; witnesses against him may require cross examination. Points on error must be duly saved. With regard to these matters, the statutes are not mandatory, but the caution of the Legislature would fall far short of its design and be nullified in its effect, indeed be but an empty pretense, if it be not further understood that the guardian *ad litem* should watch the interests of the infant throughout the litigation, and see to it that a vigorous and real defense throughout be made by attorney. It is a moral obligation of the imperfect sort, perhaps, which can not be enforced, but it is none the less in contemplation of the law, which aims only to be as practical as possible.''

The advantages to accrue to an infant from having the presence of an acting guardian at the taking of the

proof which fixes his rights or liabilities, with reference to the subject-matter of the litigation, are manifest, and the appointment of this guardian before the taking of this proof is evidently a part of the defense which the statute contemplated he should have before judgment is rendered against him.

It might happen that this duty would not be performed even though the appointment were made in apt time, but it would at least be possible for the infant to have the benefit of the presence of his acting guardian at the taking of the proof, if he felt disposed to render that service.

The decree is therefore reversed and the cause remanded for further proceedings in accordance with the practice here announced.

McCULLOCH, C. J., dissents.

SMITH, J. (on re-hearing). Upon the original submission of this cause, the point was made that the proof was taken before the guardian *ad litem* had been appointed and the cause was briefed upon the question of the regularity of that practice and the necessity for that appointment, and we held in the original opinion that where there was no statutory guardian, proof could not be taken prior to the appointment, either by the court or the clerk in vacation, of a guardian *ad litem*. We adhere to that opinion. Attention is now called to the fact that the record shows that appellant, Mrs. Blanton, was the statutory guardian of her infant children, having been appointed before the institution of this suit. She did not answer in that capacity, however, and the defense of the infants was made by their guardian *ad litem*. No question is made as to the sufficiency of the service. The defense of the widow of the said J. P. Blanton and his infant children was a common one and was vigorously and ably made and this fact was not questioned in the original opinion. We undertook merely to define the practice in such cases. As there was a regular guardian when the depositions were taken, the reason for which the cause was reversed, does not exist.

· ·The transcript in this cause is in two parts, one of the parts consisted of the exhibits which were used at the trial. The principal question involved in the trial below was the genuineness of the agréement for the redemption of the land, signed by Blanton and Davis. No question is made that the agreement is a conditional sale and not a mortgage, in fact the amount necessary to be paid in either event is practically the same, but the exhibits which consist of a number of known, genuine signatures with the depositions of the witness in reference thereto, make an interesting study in chirography, and upon a consideration of all the evidence, we are of opinion that the chancellor's finding, that the signatures were genuine and the agreement for the redemption of the land had in fact been made, is not contrary to a clear preponderance of the evidence. There was reference to a master to state an account between the parties and while both sides filed exceptions to his report, neither now question its accuracy as approved by the court.

Upon a consideration of the whole case, the motion for a rehearing is granted and the order reversing the cause is set aside and the decree is affirmed.

HART, J., dissents.