Memory B. BALCH and Beverly Balch Price *v.*
LEADER FEDERAL BANK for Savings

92-1100                                             868 S.W.2d 47

Supreme Court of Arkansas
Opinion delivered December 20, 1993

*Arnold, Grobmeyer & Haley*, by: *Robert R. Ross*, for appellants.

*Lax, Vaughn, Pender & Evans*, by: *Audrey R. Evans*, for appellee.

PHILIP D. HOUT, Special Justice. On May 13, 1970, the owner of four certain real estate lots in downtown Little Rock (the hotel lots) entered into a Net Ground Lease (ground lease) with a lessee who intended to construct a building on the lots for use as a hotel. The lessee owned four adjacent lots (the adjacent lots) which the lessee intended to use as a parking garage in conjunction with the hotel. Paragraph 17 of the ground lease contained the following language:

> *MORTGAGE OF THE FEE.* The Lessor agrees that this lease will be subject and subordinate to the lien of first mortgage to be held by Liberty National Life Insurance Company of Birmingham, Alabama, its successors and assigns, placed or to be placed upon the leased premises as the permanent loan financing for improvements to be erected upon said premises, the maximum term of said mortgage not to exceed thirty (30) years. This agreement on the part of the Lessor to mortgage the fee shall apply only to the original construction loan and permanent financing loan and any renewal, extension or refinancing thereof. . . . Provided, however, that this lease shall be subordinated only for the actual cost of the improvements placed upon the demised premises or the amount of the loan, whichever is less.

The lessee obtained a loan from Liberty National Life Insurance Company (Liberty National) to finance the construction of the hotel, and the repayment of the loan was secured by a mortgage on the hotel lots that was signed by both the owner and the lessee.

Later the appellants, Memory B. Balch and Beverly Balch Price (the Balches), became the owners of the hotel lots, and The Crestwood Company (Crestwood) became the tenant under the ground lease and the owner of adjacent lots. The parties have stipulated that the ground lease remained binding on the Balches and Crestwood, and that the mortgage to Liberty National was

effective to encumber the fee simple absolute interest in the hotel lots.

On August 24, 1987, when the Liberty National loan was in default, Crestwood obtained a loan from appellee, Leader Federal Bank for Savings (Leader Federal), in an amount that was substantially equal to the unpaid balance of the Liberty National loan. The proceeds of the Leader Federal loan were used to pay off the Liberty National loan, and the mortgage securing the Liberty National loan was released.

All of the documents for the Leader Federal loan were prepared by or at the direction of Leader Federal. The loan was evidenced by a note signed by Crestwood, and it was secured by a mortgage on the hotel lots owned by the Balches, and also on the adjacent lots owned by Crestwood. Only Crestwood and its partners signed the mortgage, in which Crestwood acknowledged that it owned only a leasehold interest in the hotel lots. The Balches were not asked to sign the mortgage with Crestwood, nor did they do so. However, the Balches were asked to sign separate but identical Estoppel and Subordination Certificates (Certificate) which state:

TO: Leader Federal Savings & Loan Association

. . . .

THIS IS TO CERTIFY THAT:

1. The undersigned is the Lessor under that . . . Net Ground Rental Lease . . . .

2. That said Net Ground Rental Lease has not been modified, . . . in any respect and is the only Lease between the undersigned and the Lessor . . . .

3. That the Net Ground Rental Lease is not in default . . . .

4. Lessor acknowledges and consents to the loan in the amount of approximately $1,924,000.00 by Leader Federal Savings & Loan Association to The Crestwood Company to be secured by a mortgage on the premises which is the subject of the Net Ground Rental Lease. Lessor recognizes that the proceeds of such loan are to repay the loan

to Liberty National Life Insurance Company and therefore pursuant to Paragraph 17 of the Net Ground Rental Lease, the Net Ground Rental Lease is subordinate to the loan and mortgage in favor of Leader Federal Savings & Loan Association.

5. That this Estoppel and Subordination Certificate is made to induce Leader Federal Savings & Loan Association to consummate a mortgage loan secured by a mortgage on the premises described above, knowing that Leader Federal Savings & Loan Association relies upon the truth and accuracy of this certificate in disbursing said funds for this loan.

Crestwood defaulted in the payment of the Leader Federal loan, and Leader Federal sued to foreclose the fee interest in the hotel lots and its improvements, as well as the adjacent lots. Leader Federal contends, and the lower court found, that the Certificate, when considered with the lease, is tantamount to a lien on the Balches' fee interest in the hotel lots. The Balches contend that they were not a party to the mortgage and that the Certificate only subordinates their interest in the ground lease, and not their fee interest in the hotel lots, to Leader Federal's mortgage.

The case was submitted to the chancellor on a stipulation of facts, depositions and oral arguments of counsel. The record indicates that the chancellor may have had difficulty in determining the intent of the parties with respect to the meaning of the various documents involved, but the chancellor ruled that Leader Federal is entitled to foreclose the Balches' fee interest in the hotel lots under the mortgage.

For reversal, the Balches contend that (1) the chancellor erred in holding that the ground lease and Certificate collectively constitute a lien upon which Leader Federal could foreclose the Balches' fee interest in the hotel lots; (2) the chancellor erred in applying a "preponderance of the evidence", instead of a "clear and convincing", standard to the proof offered by Leader Federal to establish that the Certificate and the ground lease, considered together, constitute a lien on the Balches' fee interest in the hotel lots; and (3) the chancellor erred by not making a finding on the

extent of the Balches' subordination in light of the limiting language of the ground lease.

We find the chancellor's decision to be in error.

■ It is conceivable that a lessor might effectively subject his fee interest in real estate to the lien of a mortgage that is signed only by the lessee. Such a result would occur if the lessor signs a subordination agreement or other document that contains language indicating that he clearly and unequivocally thereby intends to subject his fee interest to the mortgage, or if that intent can clearly and reasonably be determined from other attendant circumstances. The same result would occur if the lessor signs a document that gives to another, such as the lessee, authority to sign the mortgage in behalf of the lessor. However, the intention of the parties at the time of execution of the documents, as expressed by the language employed therein, governs. *Lightle* v. *Rotenberry*, 166 Ark. 337, 266 S.W. 297 (1924).

In this case, the Certificate appears on its face to be an act of the Balches that was intended to subordinate their interest in the *ground lease* to Leader Federal's mortgage. The Certificate refers only to the Balches' interest in the ground lease; and there is no clear reference in the Certificate to any intent by the Balches to subordinate their fee interest in the hotel lots, unless that intent can be found in the following language in the Certificate:

> Lessor . . . consents to the loan . . . to be secured by a mortgage on the premises which is the subject of the Net Ground Rental Lease . . . .

> . . . [T]his . . . Certificate is made to induce Leader Federal . . . to consummate a mortgage loan secured by a mortgage on the premises described above[.]

Leader Federal insists that such an intent is found in the totality of the transaction, including the language in the Certificate when considered together with the language contained in Paragraph 17 of the ground lease. We disagree.

To some extent, the language used in Paragraph 17 of the ground lease is confusing. Paragraph 17 is captioned "Mortgage of the Fee". The first sentence in Paragraph 17 states, "[t]he lessor agrees that *this lease* will be subject and subordinate to the

lien" of a certain mortgage. The next sentence states, "[t]his *agreement* on the part of the Lessor to *mortgage the fee*"; and then the last sentence states, *"this lease* shall be subordinated only for . . . ." (Emphasis added).

Interpreting the ground lease most favorably to Leader Federal, it gave to the lessee the right to *require* the lessor to mortgage the fee interest in the lessor's land. The Balches' predecessor executed such a mortgage relative to the loan made by Liberty National, but they were not asked to execute a mortgage relative to the loan made by Leader Federal, nor did they do so. No language in the Certificate, standing alone, is facially sufficient to be construed as the granting of a lien by the Balches on their fee interest in the hotel lots. On its face, the purpose of the Certificate appears to have been to (1) identify the Balches as the lessors under the ground lease; (2) confirm that the ground lease had not been modified and that no other lease existed; (3) confirm that the ground lease was not in default; (4) evidence the Balches' consent to a loan to be made to Crestwood by Leader Federal in a specific amount, to be secured by a mortgage on the hotel lots and on the adjacent lots (but without specifying who would be asked to sign the mortgage), and to subordinate the Balches' interest in the *ground lease* to such mortgage; and (5) establish that the truth of the statements contained in the Certificate was an inducement to Leader Federal to make the loan to Crestwood. Absent an actual request for the lessor to sign a mortgage, a reasonable lessor who is presented such a document as the Certificate would logically deduce that the lender intended to take a mortgage only on the lessee's leasehold interest in the land. One would not normally think that by signing such a document he would be encumbering the fee interest in his land.

Therefore, the pivotal question to be resolved here is whether the Certificate, which appears on its face to be a subordination of the Balches' interest in the *lease*, was actually intended to be a subordination of their fee interest in the hotel lots.

■■ In cases where a deed, absolute on its face, is alleged to actually constitute a mortgage, we have consistently held that the document is presumed to be what it appears to be, and that the party alleging it to be otherwise has the burden of proof by clear and convincing evidence. *Carter* v. *Zachary*, 243 Ark. 104,

418 S.W.2d 787 (1967); *Wilson* v. *Mason*, 191 Ark. 472, 86 S.W.2d 555 (1935); *Blanton* v. *Davis*, 107 Ark. 1, 154 S.W. 947 (1913); *Duvall* v. *Laws, Swain & Murdoch, P.A.*, 32 Ark. App. 99, 797 S.W.2d 474 (1990); *Brown* v. *Cole*, 27 Ark. App. 213, 768 S.W.2d 549 (1989); *Wensel* v. *Flatte*, 27 Ark. App. 5, 764 S.W.2d 627 (1989). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction of the allegations sought to be established. *First Nat'l Bank* v. *Rush*, 30 Ark. App. 272, 785 S.W.2d 474 (1990).

Applying those principles to this case, the Certificate must be presumed to be what it appears to be on its face — a subordination of the Balches' interest in the ground lease — unless Leader Federal proves otherwise by clear and convincing evidence. Leader Federal argues that in cases where no parol evidence is produced to vary the terms of a document, "preponderance of the evidence" is the quantum of proof that should be required, while "clear and convincing" is the standard that should be applied only where parol evidence is offered. Leader Federal has cited no positive case law to support that view, and the argument is without merit. It is inconceivable that a party who has the burden of proving a proposition by clear and convincing evidence might avoid that standard of proof, and take advantage of a lesser standard, by abstaining from offering parol evidence. Further, in *Hickman* v. *Trust of Heath, House and Boyles*, 310 Ark. 333, 835 S.W.2d 880 (1992), the "clear and convincing" standard was applied to the interpretation of two documents when no parol evidence was offered to assist in the interpretation.

As the proponent of the proposition that the Certificate, when considered with the ground lease, was intended to constitute an encumbrance of the Balches' fee interest in the hotel lots, Leader Federal has the burden of proving that proposition. Since the Certificate does not appear on its face to encumber the fee, Leader Federal is required to meet its burden of proof by clear and convincing evidence, whether or not it chooses to present parol evidence.

At best, an ambiguity exists when the provisions of the Certificate are considered together with the applicable provisions of the ground lease. The Certificate states on its face that the Balches are subordinating their interest in the *ground lease*, while the

ground lease, if given its most liberal interpretation, contains only an *agreement* to mortgage the fee. An agreement to mortgage property is an agreement to *execute* (or sign) and deliver a mortgage. It does not, in and of itself, grant a lien on the property. Does the *agreement* to sign a mortgage, which is contained in the ground lease that was signed long before the Certificate, modify the Balches' otherwise clear statement of intent in the Certificate to subordinate only their interest in the ground lease? We think not.

There is nothing in the Certificate to reasonably indicate that the Balches intended to confer upon Crestwood the authority to execute the mortgage on their behalf; and the mortgage does not indicate that Crestwood was acting in a representative capacity for the Balches in signing the mortgage. In fact, the mortgage recites that Crestwood had only a leasehold interest in the hotel lots. Further, there is no clear indication in the Certificate that the Balches thereby intended to subordinate anything other than their interest in the ground lease. To the contrary, the Certificate clearly states, "therefore, pursuant to Paragraph 17 of the . . . Lease, the . . . Lease is subordinate to the loan and mortgage in favor of Leader Federal[.]"

If Leader Federal had wanted a lien on the Balches' fee interest in the hotel lots, it could have insisted that the lien be granted in the conventional manner by requiring the Balches to sign a mortgage; or, in the alternative, it could have insisted on a lien in a less conventional manner by preparing the Certificate in such a way as to make it clear that the Balches were subordinating their fee interest, and not just their interest in the ground lease. A third way that Leader Federal could have obtained a lien on the Balches' fee interest would have been to prepare the Certificate in such a manner to make it clear that the Balches were appointing Crestwood as their attorney-in-fact to execute the mortgage in their behalf. None of those methods was successfully employed by Leader Federal.

The record indicates that the Certificate was prepared by or at the direction of Leader Federal. The record does not reflect who prepared the ground lease, but Leader Federal adopted the language of the ground lease by referring to it in the Certificate. The Certificate does not clearly reflect an intention by

the Balches to encumber their fee interest or to subordinate their fee interest to Leader Federal's mortgage. When the provisions of the Certificate are considered with the applicable provisions of the ground lease, the most that can be said is that an ambiguity exists which must be resolved against Leader Federal, as the author of the Certificate. *Planters Nat'l Bank of Mena* v. *Townsend,* 197 Ark. 267, 123 S.W.2d 527 (1938).

■ The intention of an owner to encumber his property should never be established by mere inference or speculation. Where a document, which appears on its face to be only a subordination of an interest in a lease to a mortgage, is alleged to actually constitute an encumbrance of the fee interest in the land that is the subject of the lease, the document is presumed to be what it appears to be, and the party alleging it to be otherwise has the burden of proof by clear and convincing evidence. *Blanton,* 107 Ark. 1, 154 S.W. 947.

■ The only evidence in the record that might be found to establish an obligation on the Balches to encumber their fee interest is the language contained in Paragraph 17 of the ground lease. If that language is so construed, the Balches' obligation thereunder would be to mortgage their land if requested to do so. For reasons which are not clear in the record, neither Crestwood nor Leader Federal requested the Balches to sign a mortgage to secure Leader Federal's loan to Crestwood, and the Balches did not do so. The Certificate clearly states on its face that the *ground lease,* and not the Balches' fee interest, is subordinate to the mortgage; and the Certificate did not authorize Crestwood to sign the mortgage in behalf of the Balches. Therefore, it cannot be logically and reasonably concluded from the record that by signing the Certificate the Balches intended to encumber their fee interest in the hotel lots.

■ The Balches' contention that the chancellor erred by not making a finding as to the extent of their subordination should be resolved regardless of whether the Balches are found to have subordinated their interest in the ground lease or their interest in the fee. We find the Balches' position on this point to be without merit. By signing the Certificate, the Balches effectively either (1) agreed that the amount of the Leader Federal loan was equal to or less than the cost of the improvements placed on the

hotel lots or (2) waived the applicable provisions of the ground lease regarding that limitation.

For the reasons stated, the decision below is reversed and the case is remanded to the lower court for the purpose of entering a decree that is consistent with this opinion.

HAYS, J., Special Chief Justice EUGENE HUNT, and Special Justice C. JOSEPH CALVIN dissent.

HOLT, C.J., DUDLEY and BROWN, JJ., not participating.

EUGENE HUNT, Special Chief Justice, dissenting. The majority takes the position that the fee interest owned by a lessor cannot be the subject of a foreclosure decree, regardless of the facts, unless the holder of that fee interest signs or authorizes another to execute a mortgage encumbering the fee interest.

On September 10, 1992, the chancery judge found that Leader Federal Bank for Savings (Leader Federal) the lender to The Crestwood Company, the lessee, had a right to foreclosure upon the fee interest held by Beverly Balch Price and Memory B. Balch (the Balches) even though, the Balches, owners of the fee interest had not been a party to the mortgage encumbering their interest.

On May 13, 1970, the predecessors in title of the Balches entered into a lease of lots one (1), two (2), three (3), and four (4) of Block 106, Original City of Little Rock, Pulaski County, Arkansas, which is entitled Net Ground Rental Lease with the predecessors of The Crestwood Company. All parties have agreed that they are bound by the acts of their predecessors, therefore the mesne transactions which placed title in the Balches and The Crestwood Company need not be described in this opinion. Under the terms of the lease, the Balches would retain fee title to the land owned by them and receive rental payments from The Crestwood Company. The Crestwood Company as lessee of the property would build a hotel on the land owned by the Balches. Lots nine (9), ten (10), eleven (11) and twelve (12) in block 106 to the Original Town of Little Rock, Pulaski County, Arkansas, are owned by The Crestwood Company. A parking garage was constructed upon the foregoing described land owned by The Crestwood Company which is adjacent to the hotel.

The Balches and The Crestwood Company realized that it would be necessary to borrow money to finance construction of the hotel, and they provided for this expected occurrence in the lease so the Balches agreed to subordinate their fee interest to the lender who financed the development or to the successors who agreed to refinance the original construction loan. The hotel was constructed by a loan made by Liberty National Life Insurance Company (Liberty National) to the Crestwood Company lessee. The Crestwood Company executed a mortgage to Liberty National which mortgage encumbered land owned by the Balches and the land owned by The Crestwood Company.

The hotel was constructed and is known as the "Holiday Inn City Center." The operation of the hotel did not generate sufficient cash flow to keep the mortgage to Liberty National current and foreclosure was threatened. The Balches were aware that unless the Liberty National loan was brought current through refinancing or some other means they would lose their land.

On August 24, 1987, The Crestwood Company borrowed $1,923,829.68 from Leader Federal. The loan closing documents were a promissory note and a mortgage by The Crestwood Company on the real property it owned upon which a parking garage is located adjacent to the hotel, the improvements located on the property owned by the Balches, and the leasehold estate held by The Crestwood Company in the property owned in fee by the Balches to Leader Federal. In addition to the mortgage, the Crestwood Company assigned its rights in the Net Ground Rental Lease and also assigned all rents to be collected on the hotel property to Leader Federal. The Balches signed separate documents entitled "Estoppel and Subordination Certificate" prior to the loan closing between Leader Federal and The Crestwood Company.

After the loan was closed, Liberty National was paid in full and it released the lien of first mortgage held by it on the property. The mortgage encumbered both, the Net Ground Rental Lease between the Balches and The Crestwood Company and the fee interest of The Crestwood Company.

On September 17, 1990, The Crestwood Company filed bankruptcy and Leader Federal sought and secured relief from the

automatic stay to pursue foreclosure of its security interest in the Holiday Inn City Center. On November 27, 1991, Leader Federal filed a complaint in the chancery court of Pulaski County, Fifth Division, seeking to foreclose not only the interest of The Crestwood Company which is lots nine (9), ten (10), eleven (11) and twelve (12) in Block 106, Original Town of Little Rock, Arkansas, but also the fee simple interest held by the Balches in lots one (1), two (2), three (3) and four (4), Block 106, Original City of Little Rock, Arkansas. The case was submitted to the chancellor upon the stipulations of the parties. On September 10, 1992, a decree of foreclosure was entered foreclosing the fee simple interest of the Balches. The relevant portion of Paragraph 17 of the Net Ground Rental Lease reads:

> *MORTGAGE OF THE FEE.* The Lessor agrees that this lease will be subject and subordinate to the lien of first mortgage to be held by Liberty National Life Insurance Company of Birmingham, Alabama, its successors and assigns, placed or to be placed upon the leased premises as the permanent loan financing for improvements to be erected upon said premises, the maximum term of said mortgage not to exceed thirty (30) years. This agreement on the part of the Lessor to mortgage the fee shall apply only to the original construction loan and permanent financing loan and any renewal, extension or refinancing thereof.

Paragraph 4 of the "Estoppel and Subordination Certificates" provides that:

> Lessor acknowledges and consents to the loan in the amount of approximately $1,924,000.00 by Leader Federal Savings & Loan Association to The Crestwood Company to be secured by a mortgage on the premises which is the subject of the Net Ground Rental Lease. Lessor recognizes that the proceeds of such loan are to repay the loan to Liberty National Life Insurance Company and therefore pursuant to Paragraph 17 of the Net Ground Rental Lease, the Net Ground Rental Lease is subordinate to the loan and mortgage in favor of Leader Federal Savings & Loan Association.

A ruling in this case turns upon an interpretation of the effect of the foregoing language from the instruments executed by the Balches and their predecessors in interest.

The chancellor found at Paragraph 8 in the foreclosure decree that Leader Federal, as a result of the mortgage from The Crestwood Company, the Estoppel and Subordination Certificates from the Balches and the Net Ground Rental Lease between the Balches and their predecessors in interest, holds a first mortgage on the property and its right to foreclose is absolute. The court granted Leader Federal an *in rem* judgment against the mortgaged property in the principal amount of $2,191,996.32 plus interest as of February 2, 1992, and attorneys fees as provided in the note which evidenced the debt between Leader Federal and The Crestwood Company.

The chancellor found that Leader Federal, *as a result* of the mortgage from The Crestwood Company, the Estoppel and Subordination Certificates from the Balches and the Net Ground Rental Lease between The Crestwood Company and the Balches holds a first mortgage on the property and its right to foreclose is absolute. This finding is clearly supported by the record. This court has not answered the question presented in this appeal in any of its previous decisions. The majority has looked to this court's well developed body of law governing real estate foreclosure without an in depth analysis and has said that a party *must* execute a document identified as a mortgage before a foreclosure decree will lie. Such a finding ignores the transaction that occurred between the Balches, The Crestwood Company and Leader Federal. The majority appears to be paying blind homage to their conclusion that there cannot be a foreclosure without a mortgage of the fee simple interest.

The issue of whether the fee holder or lessor must sign a lessee's mortgage was addressed by the Kansas Supreme Court in *G. Credit Co.* v. *Mid-West Land Dev., Inc.*, 485 P.2d 205 (Kan. 1971). The Kansas court held that if the landlords had intended that all mortgages to which their fee interest was subordinated by the terms of the lease be executed by them, they could have included that condition in the lease. The court concluded that it is not necessary to have the lessors' signatures on the mortgage unless there is an express condition in the lease agreement mak-

ing lessors' signatures on the mortgage contract necessary. There is no such condition in lessors' lease to lessee. There is a clearly stated agreement to mortgage the fee to a refinancing lender in Paragraph 17 of the lease. The Balches effectively subordinated their interest to the lessee's mortgage, by their execution of the Estoppel and Subordination Certificates. The Estoppel and Subordination Certificates and the Net Ground Rental Lease were effective in providing a basis upon which the Balches' fee interest could be foreclosed upon only because The Crestwood Company executed a mortgage to Leader Federal covering the land described in both the Net Ground Rental Lease and the Estoppel and Subordination Certificates. The authority given The Crestwood Company to mortgage the fee owned by the Balches is contained in the Net Ground Rental Lease. The Estoppel and Subordination Certificates cause the interest of the Balches to be inferior to that of Leader Federal in this foreclosure action. By virtue of subordinating the ground lease, the fee interest of lessors is subordinated to the mortgage held by Leader Federal. As explained in a University of Miami Law Review:

> The landowner who enters into a *subordinated* ground lease not only surrenders control of the property to his tenant . . ., but he also covenants to subject the property to a mortgage, the proceeds of which go to the tenant. The mortgage or mortgages to which the landlord subordinates are fee mortgages, since they not only encumber his interest in the land, but his tenant's as well.

Seneca B. Anderson, *Negotiating and Drafting Leases for the Landlord*, 25 U. of Miami L. Rev. 361, 390-91 (1971). To understand the transaction and that it resulted in the subordination of the fee, a focused study of the language of the two documents signed by the Balches as lessors and holders of the fee interest is necessary. The Balches signed the Estoppel and Subordination Certificates and their predecessor in interest signed the Net Ground Rental Lease. A close review of Paragraph 4 of the Estoppel and Subordination Certificates confirms that such agreement signed by the lessors effectively subordinates the ground lessors' fee interest to the Leader Federal mortgage. Paragraph 4 of the Estoppel and Subordination Certificates states, inter alia, that:

Lessor acknowledges and consents to the loan in the amount of approximately $1,924,000.00 by Leader Federal Savings & Loan Association to The Crestwood Company to be secured by a mortgage on the premises which is the subject of the Net Ground Rental Lease. Lessor recognizes that the proceeds of such loan are to repay the loan to Liberty National Life Insurance Company and therefore pursuant to Paragraph 17 of the Net Ground Rental Lease, the Net Ground Rental Lease is subordinate to the loan and mortgage in favor of Leader Federal Savings & Loan Association.

The foregoing paragraph must be read in conjunction with the Net Ground Rental Lease. When the two documents are read together, it is clear that the Balches, the owners of the fee interest and lessor herein agreed to subordinate their fee interest in the land to the mortgage of Leader Federal. In the first sentence of Paragraph 4 of the Estoppel and Subordination Agreement, the ground lessors agree to give a mortgage on the premises which is the subject of the Net Ground Rental Lease. It was not necessary for the Balches to follow up and execute a mortgage. The Balches' consent to the loan was relied upon by Leader Federal. The "premises" described in the Net Ground Rental Lease is not a building, but Lots 1-4, which is the description of the land contained in the mortgage from The Crestwood Company to Leader Federal.

The second sentence of Paragraph 4 states that "pursuant to Paragraph 17 of the Net Ground Rental Lease, the Net Ground Rental Lease is subordinate to the loan and mortgage in favor of Leader Federal Savings & Loan Association." By connecting this language to that contained in Paragraph 17 of the Net Ground Rental Lease, it is clear that the agreement is to subordinate the fee interest to the mortgage. Paragraph 17 is entitled "Mortgage of the Fee." The language of Paragraph 17 of the Net Ground Rental Lease states: "This agreement on the part of the Lessor to mortgage the fee shall apply only to the original construction loan and permanent financing loan and any renewal, extension or refinancing thereof." By inserting the reference to Paragraph 17, the Balches, as ground lessors-fee owners agreed to subordinate their fee interest to the lender providing funds for the purpose of refinancing the original loan. By signing the Estoppel and Sub-

ordination Certificates, the Balches, as ground lessors, signed the documents which evidenced their present agreement. Signing an agreement to subordinate their fee interest to the Leader Federal mortgage has the same effect upon the Balches as The Crestwood Company's signing the lessee's mortgage to Liberty National and subsequently to Leader Federal.

Well-settled Arkansas law requires that different clauses to a single agreement be construed, not in isolation, but as a whole and in light of the circumstances surrounding the execution of the agreement. Because Paragraph 17 of the Net Ground Rental Lease is incorporated by reference into the Estoppel and Subordination Certificates, Paragraph 17 must be read as a clause of the agreement. This court has long followed the principle that these clauses be harmonized by ascertaining the intention of the parties within the context of the transaction under review:

> In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. *The object is to ascertain the intention of the parties*, not from particular words or phrases, but from the entire context of the agreement.

*RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 554, 713 S.W.2d 462, 465 (1986) (citing *Wynn* v. *Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973)) (emphasis added).

In interpreting the meaning of contracts, the object is to determine the intention of the parties from the entire context of the agreement. Intent is "'ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the . . . contract as a whole.'" *Republic Nat'l Life Ins. Co.* v. *Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979) (quoting *Cement, Sand & Gravel Co.* v. *Agricultural Ins. Co.*, 30 N.W.2d 341, 345 (Minn. 1947)).

When Paragraph 17 of the Net Ground Rental Lease and Paragraph 4 of the Estoppel and Subordination Certificates are

read together, and when the words are given meaning in accordance with the obvious purpose of the contract as a whole, it is clear that the Balches intended to and did subordinate their fee to Leader Federal's mortgage.

Judge Brantley honored the terms of the two documents and found that, as a matter of law, the Estoppel and Subordination Certificates when read in conjunction with the Net Ground Rental Lease served as a sufficient predicate upon which a foreclosure action may lie.

Chancery cases are tried *de novo* on the record on appeal. *Dopp* v. *Sugarloaf Mining Co.*, 288 Ark. 18, 702 S.W.2d 393 (1986); *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Walt Bennett Ford, Inc.* v. *Pulaski County Special School Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981). The findings of the chancellor are not against the preponderance of evidence. Leader Federal met its burden in this case and there is sufficient evidence to undergird the chancellor's decision.

I must respectfully dissent.

HAYS, J. and Special Justice C. JOSEPH CALVIN join in this dissent.